Good morning, everybody.  So this is the latest. Do you want to reserve any time? I'd like to reserve five minutes. Thank you. This is the latest chapter in a long-running history of litigation. Involving burn Schaffer's and his LLC. On April 15th of this year, the Superior Court entered a judgment. That had been previously imposed on Mr. Schaffer's against his LLC, which in which he is a 50% member along with his ex-wife and that was after a pellet decision that had reversed the previous ruling imposing the judgment on the LLC. So upon re hearing the Superior Court reimposed the judgment on the LLC. And at the same time, a tax auction was pending against the LLC property because the LLC owns the property that's at issue here today. And so we filed a chapter 11 on May 12th. And we were converted to chapter 7 on day 70 and the OSC was set on day 58. I'm here today because I object to having my cases converted to chapter 7. When we have closed out all the bank accounts, we have filed operating reports. We have filed all the schedules. We have obtained insurance. And we never got the opportunity to and our plan was to sell the property after seven or eight years of litigating over the property. We had intended to sell the property for 3.5 million dollars. And we had scheduled a motion for to do that prior to the date that the case was converted. I also had a motion on to approve the employment of two realtors. And that motion was scheduled for September the 9th. And the bankruptcy court converted the case anyway because I didn't file a motion or a response within seven days. I object to that. I didn't have time to file a response within seven days. I had to find realtors, which I did ultimately find. And I had to determine what the sale price was, which I ultimately did. We're now being told, for the court's information, that the chapter 7 trustee is going to sell the property for 2.5 million dollars. I haven't seen that in writing. That's just what I'm being told. We had a plan to sell it for 3.5. So, at the time of the hearing on the OSC, it sounded to me like the bankruptcy court was intending to dismiss the case based on his comments. And then he changed his mind after being told by Mr. Bell to go ahead and dismiss the case, if you saw that. Because he thought we were going to refile another bankruptcy. Which is a reflection of the smearing that has been given to my client, based on Mr. Bell's representation of this judgment creditor. In the prior chapter 11 that was filed by Mr. Schaffer's, which again was converted, he had objected to the appointment of a chapter 7 trustee on the ground that the chapter 7 trustee would have nothing to do. He was right about that. The property that was owned by the LSC couldn't be sold at the request of Mr. Bell, because the debtor didn't own the property. It was a fundamental proposition, which this court, I believe, made clear. It was this court that straightened out that whole record. So, months and months and hours and hours of time and attorney's fees were wasted trying to sell the property that the debtor didn't own. Somehow, Mr. Schaffer's had been smeared with that history, even in this case. If you file a case and you've complied with the rules, and none of the grounds in 11-12 apply, which they don't, as a basis for converting the case, why is my case being converted? Well, Doug, isn't there a couple issues? First of all, you were seeking to be appointed as counsel for the debtor in possession, but you also represented the 50% shareholder, and in fact, you filed a proof of claim on behalf of that 50% shareholder. That means you're not disinterested. So, you couldn't have been appointed to be a counsel for the debtor in possession under the bankruptcy code. Well, we had a plan to sell the property. So, there was no real need not to appoint me. Well, but it's an LLC. The debtor's an LLC. The debtor has to be represented by counsel. The debtor can't represent itself. So, there needs to be counsel appointed for the debtor in possession in this bankruptcy case, but you wouldn't have been able to be, and there was no other employment of an attorney, is my understanding of the record. I happen to know this client. I happen to know the history of this litigation for eight years. It would take thousands of dollars to find an attorney to step in and represent this debtor, especially when the LLC was added under a theory of reverse veil piercing in April of this year. That meant there was no longer a distinction between the two entities. The imposition of the judgment against Mr. Schaffer's was imposed on the debtor. So, we no longer have a conflict. We're one and the same. And if you don't want to appoint me, which I don't believe was the basis for converting the case, why don't you just give the debtor a chance to hire another attorney, which I believe as a practical matter would have been impossible. Well, then you have the other aspect of it that you only had two creditors, and one of the creditors said that they wouldn't be voting for a plan. So, you said that there wasn't grounds under 1112, but one of those is the inability to reorganize. And if you have a creditor that's not going to vote for a plan, you can't cram the plan down over the objection of the creditor. So, how could you have the debtor reorganized? Well, the creditor would have received. The creditor would not have been impaired under the plan. The creditor would have received everything he was entitled to after selling the property. In other words, the property has a certain value. Whether he sells the property in a state court proceeding or it's sold in a bankruptcy proceeding, he's only going to get the net equity out of the property. He's not impaired. There's no other asset to be disposed of. But counsel, you indicated that you were given notice that there was a certain period of time in which you were to respond, and you made a decision that it was more important to file the motion to sell, to file the applications to employ, than it was to respond. And that was something that you tactically decided, strategically decided, was how you were going to deal with this issue. And then you were going to argue to the court at the time of the hearing on the OSC, I've gotten further down the line than we were when we started, and therefore, the fact that I didn't respond is evident from what I did do, and you should just ignore the fact that I didn't respond. The court didn't view it that way. The court viewed it as a concession that you didn't oppose what he had suggested was necessary and set the OSC for, correct? That is a literal interpretation. Of his decision and the facts as they occurred on the ground at the time. Well. Right? I mean, you made a choice. I filed a response, okay. You didn't file a response timely. I filed a response because I had, I didn't have a realtor at the time of the. But you could have said, I intend to employ a realtor. I intend to employ a broker. I will be responsive. We will demonstrate to the court over some reasonable period of time, this is what I want to do in opposition. But you didn't oppose it. And you could have asked for time, for more time. You could say, court, please give me an extension of time because I intend to get a realtor. I intend to do this. I need more time to do that. But you waited until the time period expired before you did anything. Is that right? A lot of moving parts in this case. And when he set the OSC, you know, I didn't have a realtor. I didn't have it in my mind what the sale price would be. So maybe I should have said give me more time. But it didn't sound like he was going to give me more time anyway. And then I did come up with a realtor. We got the realtors and we decided what the sale price would be. And I filed a response. It was seven days late, and I believe I should have been excused from that. Instead of converting the case, you want to sanction me or you want to make some other orders besides the devastating decision to convert the case? Please give me a break. Do you want to reserve five minutes? We're at 4.49. Five minutes. Sure. Good morning, and may it please the Court. I'm William Bell, Bell and Burkhardt. I'm here on behalf of Blizzard Energy, Inc., not technically the appellee because it really was the judge's motion that got granted, but we're sort of trying to stick up for it. What we never hear from the appellant is the standard of review, and we kind of have to start there. And it is clearly abuse of discretion, and I've cited the Ninth Circuit case, Consolidated Pioneer Mortgage Entities, for that proposition. And that's a very, very high standard for an appellant to overcome. They have to prove that it's based on an erroneous conclusion of law or that the record contains no evidence upon which the decision could be reached. And we never hear that. I just hear Mr. Ramey say, I don't like the decision. That's just not the standard. I think the panel understands that, I mean, not only did we not have counsel for the debtor, but we never could have counsel for the debtor. So Mr. Ramey did eventually file something that looked a little bit like an employment application, though I point out in my brief the different both local rule and national rules it violated. It didn't meet the requirements of an appropriate employment application for counsel for the debtor. And as Judge Nieman pointed out, an LLC cannot appear without counsel. And then we have these just incurable deficiencies, conflicts between Mr. Schaffer's that Mr. Ramey admittedly continues to represent and BKS Cambria. And I just want to talk a little bit about the unavoidable conflicts. First of all, Mr. Schaffer's received both preferential and avoidable post-petition transfers from this debtor. It's kind of a rookie mistake, frankly, but what he did was he wrote himself a check the day before he filed. Then he filed the case. Then he cashed the check the next day. That's a 549 avoidable transfer. It is a clear conflict between Mr. Schaffer's and the estate. Also we have the bizarre activity. Mr. Schaffer's signed the schedules under penalty of perjury saying there were only two creditors, my client and the property taxes, and then turned around and filed a proof of claim himself. So was the proof of claim intentionally fraudulent or were the schedules intentionally filed falsely? One or the other has to be right. Third thing, the Statement of Financial Affairs, which is required to include these things, omitted payments to Mr. Ramey that occurred within 30 days of the filing of the case. I'm not talking about the retainer. We'll get to that in a second. But there was a $3,800 payment to Mr. Ramey. That's got to be in the Statement of Financial Affairs. There were payments to Mr. Schaffer's over a period of time. Those have to be in the Statement of Financial Affairs, and they weren't. So here we have an individual party that is, I don't know how else you can put it, but concealing the conflicts that he had with the estate and that he's also represented by Mr. Ramey. And then we have the kind of bizarre situation. I mean, part of the employment application is that you have to reveal the retainer and what you intend to do with it. And Mr. Ramey said, I got $7,500. Now, we went to the first meeting of creditors, and I asked him, I said, well, what's this $7,500 for? And Mr. Ramey's answer, and it's in the record because I put it in my declaration, he said, well, you could say it had been earned pre-petition. You could say? He didn't even say. He just said you could say. And in addition, then he said, well, yeah, it was earned pre-petition. And the petition is six pages long. It has the address of the debtor and the EIN of the debtor. Now, that's not $7,500 worth of work. Now, Mr. Ramey, I'm sure if he had done a retainer properly and obeyed the requirements of the U.S. trustee in our district, could have earned $7,500 in this case. He's right. That's not a lot to pay a debtor's lawyer in a Chapter 11 case. I think we all know that wherever we're from. But still, he didn't do it. He just said I'm taking $7,500 and I'll tell you later what it's for. I mean, so this is stacking up the completely inappropriate activities that were going to keep Mr. Ramey's application forever being granted, even if he'd ever done it procedurally properly. Now, there's been talk about 1112 and whether the 1112B requirements were met by the court. But the, you know, as the judge pointed out, inability to consummate a plan, sorry, confirm and consummate a plan, these two parties go back a long way. And I know that Mr. Schaffer's doesn't like it that my client got a $3 million fraud judgment against him. He doesn't like it that that was affirmed on appeal in the state of Missouri. He doesn't like it that it was affirmed on appeal by the Missouri Supreme Court. He doesn't like it that it was domesticated in California. He doesn't like it that BKS Cambria had its veil pierced and is found to be jointly liable for the judgment. But those things all happened. And they're not before this court, nor were they before Judge Clifford. The past is prologue, as Shakespeare said. Those are the facts. And Mr. Schaffer's doesn't really get to re-argue them again in this form. And then we also have the failure to comply with the orders of the court, including to file a response to the OSC. Mr. Ramey acts like the OSC was some, just some emergency thing that got dropped on his head. But he had about 45 days to produce a status report after the court entered an initial order for status conference. And the initial order clearly says, if your case isn't straight when you come in front of me, I can convert your case at the status conference. It's in the judge's order creating the status conference. Well, the case wasn't straight. I mean, Mr. Ramey wasn't employed and didn't have anything going on that. There were other issues. And so the judge, instead of saying, my order raised status conference says I can convert the case, he said, I'm going to give you another chance. I'm going to do an order to show cause. Now, Mr. Ramey says, I didn't get enough time. The interesting thing is, instead of if the judge filed his order to show cause, if I had filed a motion to convert or dismiss the case, I would have filed it on exactly the day the judge filed the order to show cause, 21 days prior to the date of the hearing. That's our local rule. I could have filed the motion then. Our local rule gives you until 14 days before the date of the hearing to file a response. In other words, the OSC gave the debtor exactly the amount of time that any motion filed under local rule would have done. And then I would have had seven days after that to file a reply brief. I did file a brief. It was in the nature of a reply, except there had been no opposition filed. The debtor actually filed its response to the OSC after I filed the reply, which there's an issue of due process there, but it isn't the debtor that's gotten not due process. It's my client. Because I didn't get the opportunity to see their response before I filed my reply. Not that it mattered much, I don't think. The other thing is, the way the case was briefed, the debtor didn't give you the judge's opinion. I mean, I never know what to do when I see that because I think I frankly could have just walked in here today and said, you know, the opinion's not part of the debtor's appendix. You've got to deny relief for that. But I just feel that's not fair to the panel. I thought the panel might want to look at what Judge Clifford said in the OSC, what he said in his tentative decision, because he gets to the end of the hearing and he says, I'm going to adopt my tentative decision. So the tentative decision has been adopted, and the debtor just didn't even give it to you. Instead, we got something I called request for judicial notice was filed this week that had a whole bunch of other stuff to stick in. I mean, again, it was all arguments about the stuff that happened back in Missouri and the stuff that happened in the Superior Court. The other thing is, I just can't let it go. Mr. Ramey suggested that he had a motion to sell teed up. Again, I don't know how things go in Washington or in Arizona or up in Sacramento, but where I practice, when you tee up a motion to sell, you usually have an offer, at least a stocking horse offer. Here's our offer. He just filed a motion to sell the property with no buyer, no offer. Hadn't yet, of course, had a realtor employed, because he did put in a few days before the hearing on the OSC, he did put in an application to employ a realtor. One would think if you were going to get into Chapter 11 and your whole plan was to sell the property, that the first thing you would be doing is hiring a realtor, not waiting 60 days until the judge is going, why is there no realtor here at the status conference? So the case wasn't going anywhere, and it never could go anywhere, because frankly, my client and Mr. Schaffer's couldn't agree on whether the day of the week ends in a Y, frankly. I mean, and who can blame my client, who's been defrauded out of $3 million, according to every court that's heard the matter, including the Bankruptcy Court, which held it non-dischargeable, and the District Court, which affirmed that. We've had a lot of appeals between Mr. Schaffer's and my client, and Mr. Ramey did provide to you the one sort of successful result he got, which was after his case was dismissed, the Ninth Circuit dismissed his appeal and vacated the opinion of not this panel, but another panel of this court, and the Bankruptcy Court, saying that he wasn't entitled to a homestead. So that's been vacated, so I guess he can argue it again if he's ever in another personal case. But he filed a claim for a homestead in this case, of course, as well, despite the fact that it's an LLC, there are no exemptions. So I mean, that's what I have. I don't know if the panel's got questions. I'm happy to answer anything I can. I guess the only question I have is that the judge asked you at some point, when he made the decision that he was going to either dismiss or convert the case, what you preferred. Oh, sure. Is that pursuant to 1112B? Well, yeah. It says that if the court's going to do it, it either converts or dismisses whichever is in the best interest of creditors. I'm looking around, I'm the only guy in the room. So, yeah, and because, of course, my client, our choices were try to do a lien sale of the property and try to sell this property that Mr. Schaffer lives on and has got problems, or have a Chapter 7 trustee do it, and then we'd get the bulk of the consideration. But pay the trustee and pay her broker and her agents and accountants. Of course, there's costs. But my client believes that that's in our best interest. And Judge Clifford listened to us since we're the only creditor, which I believe is absolutely correct on his part. Thank you. Thank you.  So the fee I received of $7,500, I told Judge Clifford it was a no-look fee. I intended it to be treated as a no-look fee since it was so modest. And I had no intention of asking for more fees. In other words, it was a flat fee. I told him that and he appeared to be okay with it, didn't question me on it at all. It's just unbelievably irritating to me that I would be attacked over this fee for a Chapter 11. And it didn't seem to be relevant to him when he converted the case. Which, again, his thinking was at the time, as I interpret it, we would file another bankruptcy, which, of course, is unjustified. The previous bankruptcy had been turned into chaos by Mr. Bell and by the United States trustee to their everlasting discredit, attempting to sell the property that was not property of the estate. And it took this panel to, not this panel, but this court to straighten that out. And years and months of waste was caused directly by Mr. Bell and by the trustee. Who, by the way, the trustee in this case recommended or moved to dismiss the case. Mr. Bell said the judge should dismiss the case with a bar and the judge winds up converting my case, which nobody asked him to do. I request the court reverse that. Thank you. Thank you. I think you're ready to call the last case. Thank you. Thank you both. Thank you for your arguments. We'll take this matter under advisement and we'll issue a decision as quickly as we can.
judges: Gan, Corbit, and Niemann